IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KEVIN ADAM GANDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 12-0315-WS-B |
| | ) | |
| CITY OF BAY MINETTE, ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This settled matter comes before the Court on the parties' Joint Motion to Approve Settlement (doc. 31) and their Supplement to Joint Motion to Approve Settlement (doc. 36).

**I.      Procedural History.**

Plaintiff, Kevin Adam Gandy, brought this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), against defendant, City of Bay Minette, Alabama (the "City"). Gandy, a former K-9 officer at the Bay Minette Police Department, alleged that the City had violated the FLSA by failing to pay him overtime compensation for compensable time outside of the normal 40-hour workweek that he spent caring for, maintaining, handling and/or training the Department's drug dog, Buster.  Gandy further alleged that the City had demoted him and terminated his employment in violation of the FLSA's anti-retaliation provisions, after Gandy asserted his statutory right to overtime compensation for those activities.  For its part, the City's position was that it properly paid Gandy in accordance with the FLSA for all overtime work that he actually performed, and that it demoted and discharged him for a legitimate reason (*i.e.*, failing to abide by Department policy regarding search procedures) rather than for inquiring or complaining about unpaid overtime.

On January 9, 2013, some nine months after the inception of this litigation, the parties attended a judicial settlement conference with Magistrate Judge Bivins.  That conference was successful.  The City agreed to pay Gandy a lump-sum amount of $32,500, in exchange for which Gandy agreed to dismiss this lawsuit with prejudice, enter into a strict confidentiality

agreement, and execute a broad release in the City's favor.  The parties allocated that lump-sum settlement amount as follows: (i) payment to Gandy of $10,100 for unpaid overtime compensation (which represented the full, entire amount of overtime pay he sought in this lawsuit); (ii) payment to Gandy of $14,900 to compromise and settle the FLSA retaliation claim; (iii) attorney's fees of $6,955.51; and (iv) costs and expenses of $544.49 (including filing fee and copying charges).

Of some significance, the ensuing settlement agreement (doc. 34) included both a rigorous, one-sided confidentiality provision and a pervasive release of claims.  The confidentiality clause specified that "Gandy agrees to forever keep all terms, provisions, and conditions of this Agreement absolutely secret and confidential;" that "[t]he confidentiality provisions are essential elements of this Agreement, and these obligations are continuing and survive forever;" and that should Gandy breach his confidentiality obligation, "he shall be liable for liquidated damages in the amount of $2,500," plus consequential damages and attorney's fees.  (Doc. 34, § XXI.)  As for the release, the agreement specified that Gandy was releasing and discharging the City and all of its agents and employees "of and from all claims … which Gandy has held, or may now hold, or may hereafter hold for any loss or injury or damage of whatever nature, whether known or unknown, arising from … wrongdoing by the Released Parties occurring or accruing prior to the date of this Agreement."  (*Id.*, § III.)

The parties now jointly request judicial approval of their settlement.  In response to an Order (doc. 35) dated February 14, 2013, the parties provided the Court with certain supplemental information concerning the settlement and made certain concessions and factual showings to conform to relevant case law.  In so doing, the parties have fulfilled their obligation to provide sufficient information for the Court to assess the *bona fides* of their dispute, and the precise contours of their resolution.  *See, e.g., Dees v. Hydrady, Inc.*, 706 F. Supp.2d 1227, 1241 (M.D. Fla. 2010) ("the parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute").

## II.    Analysis.

### A.    *Congressional Mandate of Judicial Approval of FLSA Settlements.*

In the overwhelming majority of civil actions brought in federal court, settlements are not subject to judicial oversight, scrutiny, or approval.  Congress has dictated, however, that FLSA settlements are not like those in the overwhelming majority of civil actions.  Indeed, "Congress

made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982); *see also Hogan v. Allstate Beverage Co.*, 821 F. Supp.2d 1274, 1281 (M.D. Ala. 2011) ("Settlement of an action under the FLSA differs from settlement of other claims. … [T]he FLSA's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement."); *Moreno v. Regions Bank*, 729 F. Supp.2d 1346, 1348 (M.D. Fla. 2010) ("Settlement of an action under the FLSA stands distinctly outside the practice common to, and accepted in, other civil actions.").

"Despite this general rule, an employer and an employee may settle a private FLSA suit under the supervision of the district court" where there is a "bona fide dispute over FLSA coverage." *Hogan*, 821 F. Supp.2d at 1281-82. Thus, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353; *see also Miles v. Ruby Tuesday, Inc.*, 799 F. Supp.2d 618, 622-23 (E.D. Va. 2011) ("the reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes"); *Burkholder v. City of Ft. Wayne*, 750 F. Supp.2d 990, 994-95 (N.D. Ind. 2010) ("[s]tipulated settlements in a FLSA case must be approved by the Court … because there is a fear that employers would coerce employees into settlement and waiver of their claims") (citations and internal quotation marks omitted). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354; *see also Hogan*, 821 F. Supp.2d at 1281 (settlements of private FLSA suits "are intended principally to resolve controversy over any FLSA terms actually in dispute").

Plainly, then, *Lynn's Food* teaches that district courts must scrutinize FLSA settlements for fairness, and cannot simply grant them rubber-stamped approval. The objective of this inquiry is "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp.2d at 1282. In reviewing FLSA settlements under *Lynn's Food*, courts "should be mindful of the strong presumption in favor of finding a settlement fair." *Coleman v. Target*

*Corp.*, 2013 WL 867891, *3 (M.D. Fla. Mar. 1, 2013); *see also Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7307626, *2 (N.D. Ga. Feb. 11, 2011) (recognizing "strong presumption" that FLSA settlements are fair and reasonable to plaintiffs); *Howell v. Dolgencorp, Inc.*, 2011 WL 121912, *1 (N.D. W.Va. Jan. 13, 2011) (similar).  Indeed, one district court has accurately observed that, in the absence of a bench trial, "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and that "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp.2d 1222, 1227 (M.D. Fla. 2009).  Such is the case here.

     **B.**    **Whether the Settlement is Fair and Reasonable.**

     With respect to FLSA overtime compensation, the parties agree that their settlement contemplates that Gandy will be paid 100 cents on the dollar for all overtime pay he claims to be owed, even though the City has disputed his entitlement to such compensation.  Indeed, as the parties describe it, "the settlement of his overtime claim is the exact … amount of unpaid overtime which he claimed he was due."  (Doc. 31, at 9.)  Given that the plaintiff's overtime claim is being paid in full, the Court has no reservations about accepting that settlement amount as fair and reasonable.  *See generally Bonetti*, 715 F. Supp.2d at 1226 n.6 ("If the parties submit a stipulation stating that the plaintiff's claims will be paid in full, without compromise, there is no need for the Court to review the settlement.").[1]

     As for the FLSA retaliation cause of action,[2] that claim faced substantial (and potentially insuperable) factual and legal obstacles had the litigation proceeded, given the evidence that the

---

    [1]     To be sure, the parties' agreement does not provide for the City to pay liquidated damages to Gandy.  Under the facts and circumstances presented here, however, plaintiff's decision to drop the liquidated damages portion of his overtime claim constitutes a fair and reasonable compromise.  Had Gandy prevailed on the FLSA overtime claim at trial (which was by no means a slam-dunk certainty), the City would have had a strong argument that its failure to pay him overtime was in good faith and that it had reasonable grounds for believing that such omission did not violate the FLSA, such that a liquidated damages award would be inappropriate.  *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282-83 (11th Cir. 2008) (discussing legal standard for imposition of liquidated damages).

    [2]     In reviewing the FLSA retaliation portion of the settlement for fairness, the undersigned proceeds in an abundance of caution, making no findings and expressing no opinion as to whether such judicial review is legally mandated (as it is in the FLSA overtime context).

City's decisionmakers who terminated Gandy's employment were not aware of his protected activity. Of course, retaliation claims cannot survive if the employer's representative who decided to take the adverse employment action did not know that the employee had engaged in statutorily protected conduct.[3] Under the circumstances, for Gandy to parlay his doubtful and disputed FLSA retaliation claim into a settlement of $14,900 paid to him (plus attorney's fees and costs) appears eminently fair and reasonable. Without question, plaintiff received a fair deal in his compromise of this cause of action.

Simply put, the Court concludes that the parties' settlement is a fair and reasonable resolution of a *bona fide* dispute as to each of Gandy's FLSA causes of action, for purposes of *Lynn's Food* and its progeny.

### C. Confidentiality Clause.

Determining that the settlement amounts to be paid to Gandy are fair and reasonable does not conclude the judicial inquiry. As noted, the proposed settlement includes a stringent confidentiality provision that would require Gandy (and only Gandy) to keep the settlement "absolutely secret and confidential" for a time period spanning "forever," subject to liability to the City for liquidated damages in the amount of $2,500 (plus consequential damages and attorney's fees) for any breach of same.

A substantial body of authority has denounced the use of confidentiality clauses in FLSA settlements. These courts have sharply criticized such provisions as (i) operating unequally to the benefit of the employer alone, and (ii) frustrating FLSA goals by "thwart[ing] the public's independent interest in assuring that employees' wages are fair." *Hogan*, 821 F. Supp.2d at 1283 (citation omitted); *see also Dees*, 706 F. Supp.2d at 1242 ("By including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right."). That said, most courts addressing such FLSA confidentiality provisions have not declared them to be *per se*

---

[3] *See generally Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (to prevail on retaliation claim "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action") (citations omitted); *King v. Alabama Dep't of Public Health*, 2010 WL 3522381, *9 (S.D. Ala. Sept. 2, 2010) ("It goes without saying that Johnson could not have been retaliating against King for engaging in protected activity that Johnson never knew had occurred.").

unenforceable and violative of public policy.  Rather, all but the most doctrinaire opinions on the subject acknowledge that there may be circumstances where confidentiality provisions may be appropriate and should be accepted.  *See, e.g., Killion v. KeHE Distributors*, --- F. Supp.2d ----, 2012 WL 3201889, *10 (N.D. Ohio Aug. 3, 2012) (pointing out that "other courts have nonetheless approved confidential settlements of FLSA claims"); *Bartelloni v. DeCastro*, 2007 WL 2155646, *1 (S.D. Fla. July 26, 2007) (courts "must weigh the interests in favor of openness – *i.e.*, judicial transparency – against the interest of the parties in keeping the matter secret."); *Stalnaker v. Novar Corp.*, 293 F. Supp.2d 1260, 1264 (M.D. Ala. 2003) (recognizing that there may be a "compelling reason" to seal FLSA agreements from public scrutiny, and that courts should weigh interests of judicial transparency in FLSA cases against the parties' interest in secrecy); *King*, 2009 WL 2370640, at *2 (approving confidential FLSA settlement after *in camera* review).

In this case, the parties have identified no special circumstances that might warrant approval of their confidentiality provision, which would operate solely and unequally against Gandy.  There does not appear to be any particular, special or unusual interest on the part of the City in maintaining the secrecy of the settlement; to the contrary, the City readily acknowledges that it cannot and will not be bound by any confidentiality clause because this settlement involves the expenditure of public funds.  And Gandy has not indicated that he has any specific desire or interest in preserving confidentiality.  Nonetheless, in the interest of concluding their settlement without further delay, the parties have expressed willingness to remove the confidentiality provisions set forth in Section XXI if necessary to facilitate judicial approval of same.  Subject to the deletion of that confidentiality provision, the Court will approve their settlement.

### D.     The Pervasive Release.

As noted, the settlement agreement contains a so-called pervasive or global release, under which Gandy would release all claims and causes of action he had or may have against the City, not just the FLSA claims.  Although certain courts have rejected out of hand such pervasive releases, the undersigned favors a more measured, flexible approach.  In particular, this Court has opined that "pervasive releases should be examined closely in FLSA cases because of the risk that an employee would unknowingly make a valuable concession to the employer simply to recover wages that should have never been withheld in the first place, and should be approved

only where the employee has a full understanding of what he is releasing in exchange for a settlement award." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, *6 (S.D. Ala. Feb. 14, 2013) (citation and internal quotation marks omitted).

Here, the record plainly establishes that this non-trivial standard is satisfied. In particular, plaintiff's counsel has submitted an affidavit reflecting the following pertinent facts: (i) counsel advised Gandy, and Gandy fully understood and agreed, that this settlement encompassed all of his claims and potential claims against the City, not just his FLSA claims; (ii) neither Gandy nor his attorney is aware of any other colorable claims that he has or might have against the City; and (iii) Gandy's attorney does not believe plaintiff has or might have any potentially viable non-FLSA claims against the City. (Doc. 36, Exh. A, ¶ 3.) Against this factual backdrop, there is no indication and no reason to believe that the global nature of the release confers any meaningful benefit upon the City, or works any meaningful detriment on Gandy. Furthermore, as discussed *supra*, this is not a case in which "full compensation" was unquestionably owed to Gandy on his FLSA claims. Had he gone to trial, he might have recovered nothing. So the notion that Gandy made a non-cash concession for the City's benefit to obtain wages that the City owed him anyway under the FLSA has no application here. More broadly, Gandy decided (with the full benefit of advice from his qualified, experienced counsel) to release all claims he had or might have in exchange for the settlement payment.

Given the clear record showing that Gandy was fully advised in the premises upon agreeing to a settlement agreement containing a pervasive release, this Court will not strike down this compromise as uncompensated, unevaluated and unfair under *Lynn's Food*. This is simply not a case in which a broad release was leveraged from an unwilling, vulnerable plaintiff who did not appreciate the value of his concession or understand what he was surrendering. Nor is it a case in which full compensation to Gandy on his FLSA claims was diluted by his assent to such a concession.

In sum, on this record, the Court finds that the release executed by Gandy represents a fair, knowing compromise of the risk that other accrued, unknown claims will surface, and that it in no way renders the subject settlement unfair or unreasonable under *Lynn's Food*.

## E.    Attorney's Fees.

Applicable case law teaches that "a court reviewing an FLSA settlement must review the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and

that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Crabtree*, 2013 WL 593500, at *7 (citation and internal quotation marks omitted).

The record before the Court establishes that the fees to be paid to plaintiff's counsel out of the settlement are manifestly reasonable. In particular, the settlement contemplates that plaintiff's counsel will receive a total fee of $6,955.51 in this matter, which equates to approximately 35 hours at his claimed rate of $200 per hour. The hourly rate is eminently reasonable in the Mobile market for an attorney of plaintiff's counsel's qualifications, reputation and experience performing legal services in this specialized area of law. And the number of hours is facially reasonable for a lawsuit that was pending for nine months, spanning two different fora (state court and federal court), and involved substantial discovery before culminating in a judicial settlement conference. On the information before it, the Court readily finds that the proposed attorney's fee is reasonable and that it in no way undermines the fairness or reasonableness of the amount received by Gandy ($25,000) in settlement of his FLSA causes of action.

## III.    Conclusion.

For all of the foregoing reasons, the Court concludes that the proposed settlement is a reasonable compromise and is otherwise fair and due to be approved. Accordingly, the parties' Joint Motion to Approve Settlement (doc. 31) is **granted**, and their settlement is **approved**, subject to the parties' removal of the confidentiality provisions contained in Section XXI of their settlement agreement. Pursuant to *Lynn's Food*, this Court will enter a stipulated judgment via separate docket entry.

DONE and ORDERED this 20th day of March, 2013.

s/ WILLIAM H. STEELE_____
CHIEF UNITED STATES DISTRICT JUDGE